# Johnson v. Huntington.

### In the Court below,

JEDEDIAH JOHNSON, and the rest of the inhabitants of the Town of Canterbury, *Plaintiffs ;* EZRA BISHOP, and the rest of the inhabitants of the Town of Lisbon, *Defendants.*

A woman, belonging to this State, married to an inhabitant of another State, may gain a settlement, if her marriage is void.

A lunatic, needing support, may be removed to the town where she has a settlement, although she has a reversionary estate, in fee, in the town where she resides.

THIS was an action on the case, brought by the Town of Canterbury, against the Town of Lisbon, for removing on or about the 1st of April, 1801, *Ruth Barber*, a pauper, who then was, and for a long time had been, unable to support herself, into the Town of Canterbury ; by which they were put to expence, &c.

To this action the defendants, by their agent, *B. Huntington*, pleaded the general issue ; and, in January, 1803, a special verdict was found, stating the following facts : —On the 6th of March, 1801, the select men of Lisbon removed into Canterbury *Ruth Stevens*, alias *Ruth Barber*, an insane and poor person, unable to support herself, for whose maintenance, Lisbon had expended $10.

She was born in Lisbon, and there lived till she was about thirty years of age. On the 12th of July, 1787, she was married, by the Rev. Mr. *Lee* of Lisbon, to *James Barber* of Medway, in Massachusetts, and immediately removed, with *Barber*, into Canterbury, and there lived with him, as his reputed wife, two years, and eight months. They then removed into Plainfield, and there dwelt together, six months ; then returned into Canterbury, and there lived together, till March, 1792 ; then removed into, and remained in Lisbon, one year ; then returned to Canterbury, and there lived together,

three years; then removed to Norwich, and continued there, about one year; then returned to Lisbon, and continued there, about two years. Then said *Ruth* went into Canterbury, and soon after, *Barber* transported their household furniture into Canterbury, where it remained, when she was removed, by the select men of Lisbon.

On the 11th of March, 1788, the select men of Canterbury caused a warning, directed to *James Barber*, and widow *Mary Stevens*, to be served upon *Barber*, directing them, and each of them, to leave the Town. *Barber* at the time of his marriage with *Ruth*, had a wife, living in Medway, in Massachusetts, to whom he was lawfully married, in 1762, and who survived until the year 1796. This marriage, however, was wholly unknown both to the plaintiffs, and defendants. *Barber* and *Ruth*, during their cohabitation, were reputed to be husband and wife.

In the year 1797, a patrimonial real estate, in fee, in the Town of Canterbury, was distributed to *Ruth*, of the value of 45*l*. 5*s*. 11 1-2*d*. When removed by the select men of Lisbon, she was not possessed of real estate, in Canterbury, of a greater value than $60. At the same time, a reversionary interest in one undivided eleventh part of about thirty five acres of land, in Lisbon, vested in her; subject to the life estate of her mother, who is still living; which interest was worth more than the sum expended by the Town of Lisbon, for the support of *Ruth*, previous to their removing her.

Upon these facts, the Superior Court, adjudged, that *Ruth* had gained a settlement in the Town of Canterbury, and that the defendants had a right to remove her.

1804.

JOHNSON
v.
HUNTING-
TON.

*Bacon,* for the plaintiffs in error.

Two questions arise upon this record:

First, whether *Ruth Barber* gained a settlement in Canterbury? And

Secondly, if she did, whether Lisbon had a right to remove her?

1. It is found, that she was a native of Lisbon. How has she been transferred to Canterbury? What has Lisbon done, or what has Canterbury omitted to do, to vary their respective rights? The Town of Lisbon have, indeed, married one of their paupers to an inhabitant of Massachusetts; but, if they are to gain by this, they are to profit by a crime.

Canterbury has given credit to a marriage, solemnized in Lisbon, under the forms of law. Can Lisbon impeach a marriage, to which the members of that corporation were privy?

The select men of Canterbury have sufficient legal evidence, to give credit to the marriage; for reputation and cohabitation are, to *all civil purposes*, especially in cases arising between two parishes, *conclusive evidence* that the parties are husband and wife. (a) The Court had, therefore, sufficient evidence to pronounce them such.

Suppose the select men of Canterbury had removed *Ruth* to Lisbon, and separated her from her husband; (for they could not have removed him;) *Barber* might

(a) *Bur. Set. Ca.* 508.

have brought an action against them, and need not have produced any evidence of marriage, but cohabitation and reputation. We could not have pleaded *ne unques accouple in loyal marriage.* (*b*) The Town, then, were in this strange dilemma : if they removed her, they were liable to *Barber ;* if they did not, they must support her. She was, then, in such circumstances, that she could not be removed ; and could, therefore, gain no settlement, any more than a person confined in gaol.

But if Canterbury could have contested the validity of the marriage, they were no more bound to do it, than the Town of Hartford would be to examine the validity of an execution, on which a debtor is committed to gaol, lest such debtor might become an inhabitant, if it were illegal.

A settlement cannot be gained where the residence is clandestine ; or where there has been any art, or fraud. The pauper did not reside in Canterbury, in that *fair, open manner*, necessary to give a residence ; but was there under *false colours*, claiming to be the wife of *James Barber.* Suppose a pauper should forge a deed of land in Hartford ; and, on the credit of that, should live there a year, under the old statute ; would he gain a settlement, by that evidence ?

The jury have found the Towns equally ignorant of the fact of the former marriage. One innocent party cannot throw its burthens on another, equally innocent.

Under the old law, persons could not gain a settlement, without the consent of the select men, either express or implied, unless they had real estate. But the select men

(*b*) *Comb. 151, Allen v. Gray.*

could not have assented to a thing, of which they had no knowledge. *Ruth* they knew as a feme covert, but not as a feme sole.

Although a second marriage, during the life of a former husband, or wife, is void, as it respects the parties; yet it may be very different as it respects third persons; and even a party, if innocent, may acquire some right thereby. (*c*) Thus, a woman marrying a second husband, living the first, and the second ignorant thereof, was treated as the servant of the second. (*d*) So a parol lease is void; yet it may operate as a licence. So though the contracts of an infant may be void, yet he can never treat the purchaser as a trespasser.

2. Had Lisbon a right to remove the pauper to Canterbury?

The statute for the admission of inhabitants (*e*) provides, that when a person becomes *unable* to *support* himself and family, and becomes *chargeable*, he may be removed. Such person must be *unable* to support himself. By this is doubtless meant, a pecuniary inability, and he must actually become *chargeable*; for a person may be unable to support himself, and still have relations, who save the town from charge.

Here, the jury have found, that *Ruth* had a mother, possessed of property; and that she herself had real estate in Canterbury, and Lisbon. Any payment, therefore, by the Town of Lisbon, must have been *voluntary*; and a recovery cannot be had for a voluntary payment by parish officers. (*f*)

(*c*) 2 *Pow. Con.* 10.   *Co. Litt.* 326.   (*d*) 2 *Stra.* 80, *Stratville* v. ——,
(*e*) *Stat.* 240. *Par.* 4.                (*f*) *Doug.* 9, *Simpson* v. *Johnson*,

The statute providing for the support of insane persons, ideots, &c. (*h*) makes certain relations liable, when such insane persons, ideots, &c. have *no estate.* *Ruth* being within the description of persons pointed out in that statute, the Town was not first liable, but her relations; and her relations were not liable, while she had estate; and application should have been made to the County Court, for the disposition of that estate.

*Dana,* and *Dwight,* for the defendants in error.

The question is, whether a ceremony, declared by a statute absolutely null and void, can have the effect of suspending the power of gaining a settlement? For there is no question that the pauper resided a *sufficient time* in Canterbury, under the statute then in force, to gain a settlement.

That a wife *de facto* has certain rights is admitted; but none of the cases go the length contended for in this. The case from *Powell* shews, that equity may, in such case, assist the parties, because the law cannot. In *Strutville's case,* (*i*) the court adopted a fiction, to give the innocent party the benefit of the services of the other. The case from *Co. Litt.* only serves to show the distinction between a void marriage, and one voidable. A prior marriage is an objection totally distinct from a case of precontract. A marriage after a precontract is recognized by the courts of law, till there has been a divorce; but a marriage, during the life of a former husband or wife, is *void,* by the common law, as well as by our statute. The case of *Allen* v. *Gray,* (*j*) and that from *Burrow,* only shew, that this question is not to be

(*h*) *Stat.* 232.          (*i*) 2 *Stra.* 80.          (*j*) *Comb.* 131.

E e

collaterally tried, but must be declared by the sentence of a proper tribunal ; and that a party to an illegal marriage, shall not be a witness to prove it illegal, to bastardize the issue. (*k*) A marriage, therefore, declared by statute, (*l*) to be *null* and *void*, must be considered, however hard the case may be, as though it did not exist. If a person contracts with another, who appears to be of full age, the contract, if such person is an infant, will be as completely void, as though the other party had been informed of that fact, at the time of the contract. This residence was not clandestine, because she was publicly in Canterbury ;—and if they did not know of the former marriage, the residence was at their risk.

But it is to be noted, that in the year 1788, the Town of Canterbury warned the man, but not the woman, to leave the Town.

The conduct of the Town of Lisbon, it has been intimated, amounts to giving a certificate. A certificate is a formal adjudication of a Town against itself. Lisbon could not take the risk of a marriage, merely because it was made in that Town ; and it is not pretended, that Lisbon had any concern in sending the pauper to Canterbury.

But the cases of the *King* v. *Inhabitants of Lubbenham*, (*m*) and the *King* v. *Inhabitants of Northfield* (*n*) decide the principle, contended for by the defendants, in this case.

2. Had, then, the Town of Lisbon a right to remove this pauper? The plaintiffs, in their declaration, say,

(*k*) *Esp. Dig.* 721. *Dub. Edit.* 1794.    (*l*) *Stat.* 287.
(*m*) 4 *Term Rep.* 251.    (*n*) *Doug.* 659

that she then was, and long had been, unable to support herself. They cannot, therefore, deny what they have asserted, unless the jury have found something incompatible therewith. Her interest in Lisbon is merely reversionary. The verdict states her inability, and being chargeable. The statute intended, that persons should not be removed, because they were *likely* to become chargeable; but if destitute of means, and relations do not provide for them, and expences *actually arise* to the town in which they are, then, they may be removed. It would be little to the credit of our law, if the ability of the relations was to be settled by a judicial decision, before their poor kindred could have relief. As it respects the question between towns, it can make no difference, whether there are relations, or not, for each town must maintain its own poor, whether within the town or not. The question is now between two towns, where the pauper is settled, and not between the *pauper* and a town.

*Goddard*, in reply. Independent of the marriage, *Ruth Stevens* might have gained a settlement in Canterbury. But acts, perfectly null as between the parties, may, as between other persons, draw after them important consequences. Thus, a statute (o) declares fraudulent conveyances to be *utterly void;* but if a person receiving such conveyance, convey *bonâ fide* to a third person, the decisions of the Superior Court have been, that such conveyance is good.

The case in *Burrow's Settlement Cases* is conclusive; for no intimation is given, that it was decided on the ground, that the man was an incompetent witness. There was no proof of an actual marriage, but merely

(o) *Stat.* 217.

that they had cohabited together. *This case* furnishes evidence, as abundant, surely, as *that*, of the existence of a marriage.

The case of the *King* v. *Inhabitants of Lubbenham* does not come up to this. The Court there only determine the extent of a certificate. In the case of the *King* v. *Inhabitants of Northfield*, the question as to the marriage is not directly decided.

2. The defendants have treated *Ruth Barber* as a pauper, but she is not so treated by the verdict; nor have we so treated her, in our declaration; if we have, the verdict finds facts inconsistent therewith. It finds, that she is a poor, *insane* person, unable to support herself; that her real estate in Canterbury, is worth $ 60; that she is owner of one eleventh part of 35 acres in Lisbon, worth more than $ 10; and that Lisbon have expended $ 10 for her support. The value of her estate in Canterbury can make no difference as to her gaining a settlement there, unless it exceed $ 100. Lisbon could no more remove her thither, because she had this estate there, than if she had personal estate there to that amount.

The declaration and verdict both speak of her as incapable to take care of herself, not for want of *property*, but for want of *understanding*.

The town where such person *dwells*, must provide for her, and the County Court, in the County where such person dwells, must direct how such expences are to be reimbursed. As the law now is, if a person has enough to prevent his becoming chargeable, the town, in which he is, cannot remove him, to prevent his gaining a settlement.

But, it is said, that we are estopped, by what is averred in the declaration, from saying that she is not a pauper. It is admitted, that when a fact is conceded by the pleadings, the jury cannot contradict it; but we state, that she is unable to support herself, not because she is destitute of property, but because she is *non compos mentis.* Besides, the defendants have pleaded the general issue, and, in endeavouring to prove, that she was settled in Canterbury, *they* have proved, that she had property in Lisbon. Had *we* attempted to prove this, and they objected, the doctrine of estoppel contended for might have applied.

BY THE COURT,

The judgment was affirmed.

1d 221
71 517

## Dibble *v.* Hutton.

An agreement entered into between husband and wife, during coverture, is void, and cannot be enforced in chancery against the executor of the husband.

MARY HUTTON brought a petition in chancery, to the County Court, stating, That she was the widow of *Samuel Hutton*; and that during his life they were tenants in common of 55 acres of land, lying in Norwalk, three fourths of which were owned by him, and one fourth by her. He importuned her to join with him, in conveying said land, representing to her, that it was of small profit to them, and that he could not sell his interest alone, without great loss. She, however, refused to comply with his request; but afterwards, to induce her to join in the conveyance, he offered, and solemnly promised, to pay to her one fourth part of the sum, for which said 55 acres sold, for her separate use, and to lodge with her sufficient security for the performance of his engagement. In consequence of which, she agreed to sell, and on the 6th of January, 1798, actually